UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DONALD and DEBORAH JONES,

    Plaintiffs,

VS                                                                     CASE NO. 3:05CV392-RS-EMT

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

    Defendant.

## ORDER

    Plaintiffs Donald and Deborah Jones purchased an insurance policy (the "policy") from Defendant Hartford Insurance Company of the Midwest ("Hartford") for their home in Navarre, Florida. The policy covered damage caused by windstorm and excluded damage caused by flood. In 2004, Hurricane Ivan caused significant damage to Plaintiffs' home. On October 28, 2004, the Santa Rosa County Building Inspection Department issued a "substantial damage determination letter" to Plaintiffs which stated, in relevant part:

> As a result of a substantial damage determination, the County has determined that your structure received damages exceeding 50% of the pre-damage structure value as the result of the flooding related to Hurricane Ivan, on September 16, 2004.

    Plaintiffs submitted a claim to Hartford for the total loss on their home, requesting payment for the full face value of their policy limit.[1] Hartford refused to pay Plaintiffs the full face value of the policy. Hartford contends that because the majority of the damage to Plaintiffs' home was caused by an excluded peril (flooding), Plaintiffs are not entitled to be paid the entire policy limit.

    Plaintiffs commenced this action as a class action lawsuit on October 14, 2005.

---

[1]Plaintiffs also allege that they are entitled to certain additional coverage for loss of use, debris removal, and damage to trees, shrubs, plants, and/or lawns.

On April 14, 2006, this Court denied class certification and ordered that all allegations in the Amended Complaint which pertain to a class action be stricken. The Amended Class Action Complaint (Doc. 39) alleges breach of contract. Jurisdiction is based on diversity. On December 22, 2005, Hartford filed a Motion to Dismiss (Doc. 16). A Renewed Motion to Dismiss and Motion to Close Briefing (Doc. 42-1) was filed on April 13, 2006.

The issue presented in this action is the extent of a wind insurer's liability under Florida's "valued policy law," Section 627.702 of the Florida Statutes, when a structure is totally destroyed by a combination of wind and water.[2] In Mierzwa v. Florida Windstorm Underwriting Ass'n, 877 So. 2d 774 (Fla. 4th DCA 2004), the court held that the 2004 version of Section 627.702 requires an insurer to pay the face amount of the policy when a property is considered a "total loss" due *in any part* to the risk covered by the policy. A direct conflict, however, exists between the Mierzwa decision and the decision in Citizens Prop. Ins. Corp. v. Ceballo, 2006 Fla. App. LEXIS 7002 (Fla. 3d DCA 2006). In Ceballo, the insureds' home was destroyed by fire. Defendant insurance company declared the home a total loss, admitted coverage, and paid the

---

[2]The 2004 version of Section 627.702 applicable to this claim provided, in relevant part:

> In the event of the total loss of any building . . . located in this state and insured by any insurer as to a covered peril . . . the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.

Fla. Stat. § 627.702(1) (2004). Section 627.702 was amended, effective May 10, 2006, but the amended version applies only to claims filed after the effective date of the amendment and does not apply retroactively. Fla. Stat. § 627.702(1)(c) (2005). The current amended version of § 627.702(1) provides, in relevant part:

> In the event of the total loss of any building . . . located in this state and insured by any insurer as to a covered peril . . . the insurer's liability under the policy for such total loss, if caused by a covered peril, shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.

policy's face value for the dwelling in the amount of $125,000.00.  Plaintiff insureds nevertheless filed suit to recover additional covered amounts for debris removal, trees, shrubs, and other plants, and ordinance or law expenses.  Because the insureds, however, failed to present any evidence that they actually incurred expenses relating to the additional amounts sought, the insurance company refused to pay the additional amounts pursuant to the terms of the policy.  Relying on Mierzwa's interpretation of Florida's Valued Policy Law, the trial court granted partial summary judgment in favor of the insureds with respect to the amounts sought for the law and ordinance provision.  The appellate court reversed and remanded, requiring the insureds to present proof of expenses incurred in order to recover the additional amounts sought.  The court reasoned that "[t]o hold otherwise, and provide for damages in the absence of a loss, would be a windfall to the homeowners." Id. at *3.  The Ceballo court further stated that "[b]ecause this holding conflicts with that of the Fourth District in Mierzwa, we certify direct conflict with that decision." Id.

       The validity of the Mierzwa decision and the issue presented in this case are issues of major significance throughout Florida.  Because of the widespread application of Florida's "valued policy law" to hundreds of factual situations resembling the factual situation in this case and the direct conflict between the Ceballo and Mierzwa decisions, it seems certain that a decision from the Supreme Court of Florida will be necessary for final resolution.  In a similar case before this Court, Arenson v. Citizens Prop. Ins. Corp., case number 3:05cv154-RS-MD, Judge Vinson entered an order on October 26, 2005, staying the case until resolution of a parallel state court action that was filed in the Circuit Court for Leon County, Florida, and is currently under appellate review in Florida's First District Court of Appeal.  The case is Scylla Props., LLC v. Citizens Prop. Ins. Corp, case number 1D05-3480.  The question in Scylla Props. is a question of law identical to the question presented in this case: whether an insured is entitled to recover windstorm policy limits even though windstorm did not cause a total loss of the insured structure.  According to a joint status report filed on May 11, 2006, by the parties in the Arenson case, Scylla Props. is fully briefed and the parties are awaiting an order setting oral argument.  Like the stay imposed by Judge Vinson in Arenson, an order staying this case is the most prudent course of action.

**DISCUSSION**

This Order incorporates much of the discussion in Judge Vinson's stay order in <u>Arenson v. Citizens Prop. Ins. Corp.</u>, case number 3:05cv154, entered October 26, 2005 (Doc. 22).

It is well established that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 116 S. Ct. 1712, 135 L.Ed. 2d 1 (1996); <u>American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.</u>, 743 F.2d 1519, 1525 (11th Cir. 1984). Nevertheless, in <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244, 47 L. Ed. 2d 483 (1976), the Supreme Court of the United States addressed the circumstances in which a federal court may stay a federal court action in deference to a parallel state court action. The Supreme Court based this abstention analysis on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." <u>Id</u>. at 817, 96 S. Ct. at 1236. The <u>Colorado River</u> Court stressed the federal court's "virtually unflagging obligation . . . to exercise the jurisdiction given them," but recognized that based on considerations of wise judicial administration, a district court may defer to a parallel state proceeding if "exceptional circumstances" exist which clearly justify abstention. <u>Id.</u> at 813, 96 S. Ct. at 1244. <u>See</u> <u>also</u>, <u>Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.</u>, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); <u>Lisa, S.A. v. Mayorga</u>, 2005 WL 2172165 (11th Cir. 2005) (recognizing that only "exceptional circumstances" permit a court to abstain from exercising its jurisdiction in order to avoid duplicitous litigation with a state court).

In <u>Moses H. Cone Mem. Hosp.</u>, 460 U.S. at 14-16, 103 S. Ct. at 936-37, the Supreme Court of the United States enumerated the factors that should be used in applying <u>Colorado River</u>'s exceptional circumstances test to determine when a federal court should stay a case pending resolution of a parallel state action. The relevant considerations include: (1) whether a court has assumed jurisdiction over the *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums in terms of the progress of the two suits; (5) the forum whose law provides the decision on

the merits; and (6) the adequacy of the state proceeding. Id. In analyzing each of these considerations, the Supreme Court instructed that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." Id. at 16, 103 S. Ct. at 937.

In this case, neither the federal nor the state courts have assumed jurisdiction over any property relating to this action. Rather, all cases are *in personam* actions. Thus, this consideration is not relevant to the dispute.

The second factor, the inconvenience of the federal forum, does not weigh in favor of abstention either. "The inconvenience factor focuses primarily on the 'physical proximity of the federal forum to the evidence and witnesses.'" American Bankers Ins. Co. of Florida v. First State Ins. Co., 891 F.2d 882, 885 (11th Cir. 1990). Here, the property which is the subject of this insurance dispute is located approximately 25 miles from Pensacola, the city in which this Court sits. This relatively short distance does not render this federal forum inconvenient.

In considering the third factor, avoiding piecemeal litigation, the Eleventh Circuit has cautioned that almost any time a federal case proceeds concurrently with a state case, the potential for piecemeal litigation results. Accordingly, the possibility of duplication of time and effort, by itself, will not justify the surrender of federal jurisdiction. Ambrosia Coal and Construction Co. v. Pages Morales, 368 F.3d 1320, 1333 (11th Cir. 2004). "Thus, as it is properly understood, Colorado River's factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." Id. In other words, the emphasis should be on whether there is an indication in this case that the potential for piecemeal litigation "poses any greater waste or danger here than it does in the vast majority of federal cases with concurrent state counterparts." Id.

Here, the potential for piecemeal litigation is obvious. Hartford's defense against Plaintiffs is based on the language of the policy which limits Plaintiffs' coverage to damages arising from windstorm and excludes damages arising from flooding. Plaintiffs, like the class members in Scylla Props., claim that they are entitled to

coverage based upon Florida statutory law as construed in Mierzwa. Ceballo, however, conflicts with the Mierzwa decision, and a direct conflict has been certified. Thus, inconsistent determinations in the federal and state courts will probably result in additional litigation. See Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir. 1991) (noting complications for insurer that might result from inconsistent determinations of liability in the federal suit against alleged tortfeasor and the commonwealth suit against insurance company). Further, the Scylla Props. class action court has not only entered final summary judgment in the plaintiff's favor, but the case is also well into the appellate review stage. Therefore, granting a stay in this case would substantially avoid piecemeal litigation. Nevertheless, this factor is not necessarily determinative because there is no indication that the separate tracks of litigation are a barrier to obtaining final resolution of the issue as promptly as possible.

The fourth factor concerns the order in which jurisdiction was obtained by the concurrent forums. As the Eleventh Circuit has explained, this factor takes into consideration the extent of progress that has been made in the two actions. American Bankers Ins. Co., 891 F.2d at 885 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 21, 103 S. Ct. at 940). Here, the Scylla Props. state court class action has progressed significantly further than the action in this court. The original complaint in Scylla Props. was filed in January 2005, ten months prior to the filing of the complaint in this action. Defendant insurance company in Scylla Props. consented to an expedited review. Subsequently, both parties filed summary judgment motions; some discovery was conducted; the trial court heard oral argument; and the trial court entered a final summary judgment order in favor of the plaintiffs. Defendant insurance company has appealed the case to Florida's First District Court of Appeal. The final brief was submitted to the First District Court of Appeal on April 17, 2006. The parties are awaiting an order setting oral argument. In Ceballo, the trial court entered partial summary judgment in favor of Plaintiffs. Florida's Third District Court of Appeal reversed and certified a direct conflict. By contrast, this court has not yet addressed the merits of any of Plaintiffs' claims. Furthermore, the issues presented in Scylla Props. and Ceballo are expressly limited to the interpretation of Defendant insurance company's policy and the effect of Florida's valued policy law as set forth in Section

627.702. Both sides in Scylla Props. stipulated that there were no material facts in dispute, and the issue before the state court involves a pure question of law. Likewise, the Florida appellate court in Ceballo asserted that the facts on which its decision was based - that the homeowners incurred no expenses entitling them to the additional insurance money sought - were undisputed. In this case, however, the parties have not stipulated that there are no disputed issues of material fact. Therefore, given the nature of Scylla Props. and Ceballo, the cases are already well into the appellate stages and are much further along than this federal action.

The fifth factor, whether federal or state law applies, weighs heavily in favor of staying this case pending the outcomes of the state court cases. In this diversity action, it is obvious that Florida law governs all of the parties' claims. While the Eleventh Circuit has explained that only in rare circumstances will the presence of a state law issue weigh in favor of a stay, it has also indicated that when an action involves complex questions of state law which would best be resolved by the state court, the requisite "rare circumstances" exist. See American Bankers Ins. Co., 891 F.2d at 886; Noonan South, Inc. v. County of Volusia, 841 F.2d 380, 382 (11th Cir. 1988).

This case does not present just a simple question of state law. Although the claim in this case is based on an alleged breach of contract, both parties concede that the real dispute hinges upon the proper interpretation of Section 627.702, and specifically, whether the statute requires insurance companies to pay the full face value of a windstorm policy when an insured's damage is caused by a combination of wind and flooding. This question is unsettled in Florida, and it implicates important issues regarding the public policy of the state, as well as a determination of legislative intent.[3] Indeed, a direct conflict exists between Florida appellate court interpretations of Section 627.702 as demonstrated in the Mierzwa and Ceballo decisions. Given its impact on a substantial portion of Florida's citizens in the aftermath of several devastating hurricanes in 2004 and 2005, and its potentially far-reaching effect, the proper

---

[3] Even the state trial court in Scylla Props., in granting summary judgment to Plaintiffs, noted that there "may be an ambiguity in the public policy of the State of Florida between the enforceability of anti-concurrent cause provisions in insurance policies and the provisions of the valued policy law."

interpretation of Section 627.702 is an unsettled question which apparently will have to be ultimately resolved by the Supreme Court of Florida.

The final factor, the adequacy of the state forum, operates against the surrender of federal jurisdiction only where the state forum may not be adequate to adjudicate the claims. Here, both the state court and the federal court are fully capable of adjudicating Plaintiffs' claims and allowing the matter to proceed to the Supreme Court of Florida. Accordingly, this factor does not weigh in favor of either forum.

The weight of each of these factors varies on a case-by-case basis, depending on the particularities of the case, but the balance should be weighted heavily in favor of retaining jurisdiction. Moses H. Cone Mem'l Hosp., 460 U.S. at 16, 103 S. Ct. at 937. No one factor is necessarily determinative, and the weight to be given any one factor may vary greatly from case to case. Id. However, the Eleventh Circuit has emphasized that the most important requirement is that the circumstances warranting the stay are *exceptional*, Noonan South, Inc. v. County of Volusia, 841 F.2d at 382, and in some instances, "one factor alone can be the sole motivating reason for abstention." Moorer v. Demopolis Waterworks and Sewer Bd., 374 F.3d 994, 997 (11th Cir. 2004).

Based on a careful balancing of all of these factors, staying this case at least until the resolution of Scylla Props. or Ceballo would serve the interest of wise judicial administration. If a decision is rendered in Scylla Props. before a decision is rendered in Ceballo, this Court can then reassess the stay and determine at that time whether to lift the stay or maintain the stay until resolution of the Ceballo case by the Supreme Court of Florida. Exceptional circumstances exist in this case. In resolving the issues presented, this Court would be called upon to decide an issue of unsettled and in fact, conflicting state law which significantly affects a substantial portion of Florida's citizens. The major issue presented in this case is ubiquitous and affects more than just the parties to this federal action. Both federal and state courts across Florida have had hundreds of lawsuits filed following the 2004 hurricane season, all of which hinge predominantly on the interpretation of Section 627.702, and its application to structural damage caused by flooding. Thus, there is little doubt that this issue will eventually be resolved by the Supreme Court of Florida. This important factor, coupled with the substantial progress that has been made in the parallel state cases, distinguishes this

case from the usual run-of-the-mill, federal and state counterpart cases.

A stay in this case will not subject Plaintiffs to indefinite delay because the <u>Scylla Props.</u> class action has been expedited and as discussed above, it has already significantly progressed into the appellate stage.  Final briefs have been submitted.  Generally, a stay is immoderate where the state court proceeding has progressed slowly or no specific date has been set for resolution.  <u>See</u>, <u>e.g.</u>, <u>Trujillo v. Conover & Co. Comm.</u>, at 1264-65 (holding that stay was immoderate where the record indicated that the parallel case was not progressing quickly); <u>American Manuf. Mut. Ins. Co.</u>, 743 F.2d at 1524 (finding stay pending conclusion of state court proceeding indefinite where state proceeding had been pending for eighteen months and no trial date had been set in state court).

As noted earlier, the issue in the state class action is expressly limited to a pure question of law.  The issue being a limited one, the state court moved quickly in entering a final summary judgment order, and the issue has already been fully briefed to the First District Court of Appeal.  Given the unique circumstances of the state class action, staying this federal action in deference to the state court's resolution would not result in an indefinite delay or an immoderate stay.

## CONCLUSION

For the foregoing reasons, all further proceedings in this case are stayed for a period of six months, or until resolution of the <u>Scylla Props.</u> or <u>Ceballo</u> cases, or until further order of this Court, whichever occurs first.

**ORDERED** on May 24, 2006.

                                                          /s/ Richard Smoak
                                                         **RICHARD SMOAK**
                                                         **UNITED STATES DISTRICT JUDGE**